**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X

In Re:

RAYMOND MCCORMICK,

                        Debtor.
-------------------------------------------------------X
CECILIA L. TEHUME,

                        Plaintiff,

- against-

RAYMOND MCCORMICK,

                        Defendant.
-------------------------------------------------------X
APPEARANCES:

Bruce Levitt, Esq.
Levitt & Slafkes, P.C.
76 South Orange Avenue
Suite 305
South Orange, NJ 07079
Attorney for Plaintiff

Santo J. Bonanno, Esq.
1430 Route 23 North
Wayne, NJ 07470
Attorneys for Defendant

**MICHAEL B. KAPLAN, U.S.B.J.**

CHAPTER 7

Case No.: 07-16313 (MBK)

Ad. Pro. No. 07-1868 (MBK)

**MEMORANDUM DECISION**

**I.**     **JURISDICTION**

The court has jurisdiction over this contested matter under 28 U.S.C. § 1334(a) and

157(b) and the Standing Order of the United States District Court, dated July 10, 1984, referring

all bankruptcy cases to the bankruptcy court.   This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2)(I).    Venue is proper in this Court pursuant to 28 U.S.C. §

1409(a).  The statutory predicate for the relief sought herein is 11 U.S.C. §§ 523(a)(2) and (4).[1]

The following constitutes the Court's findings of fact and conclusions of law as required by Fed.

R. Bankr. P. 7052.[2]


**II.**     **FACTS AND PROCEDURAL HISTORY**

1.      On June 24, 2005, Plaintiff Cecilia Tehume ("Tehume" or "Plaintiff"), an owner of

property located in Edison, New Jersey (the "Property"), entered into a contract with

Debtor/Defendant Raymond McCormick ("McCormick" or "Debtor"), a general contractor, for

an addition and renovations to the Property (the "Contract").  McCormick approximated that the

Contract would take two to three months to complete.

2.      The Contract provided a purchase price of $74,000.00, with a $7,400.00 deposit due at

time of signing, various installments thereafter, and the final installment due upon the Contract's

completion.

---

[1] Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub. L. 109–08, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" and "FRE" references are to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, respectively.

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

3.      Upon signing the contract, Tehume tendered a check to McCormick in the amount of $7,400.00.

4.      After obtaining the necessary building permits in October 2005, McCormick requested from Tehume the first installment in the amount of $20,000.00.  Tehume tendered payment on or about November 1, 2005.

5.      Thereafter, McCormick commenced work on the Property, constructing a frame for the addition and purchasing building materials, among various other projects.

6.      In early January 2006, McCormick requested from Tehume the second installment in the amount of $25,000.00.  Tehume tendered payment on or about January 12, 2006.

7.      Also in January 2006, Tehume entered into an oral agreement with McCormick for additional renovations to the Property, including the installation of kitchen cabinets.  On or about January 30, 2006, Tehume provided McCormick with an $8,000.00 check for the additional renovations not covered under the Contract.  McCormick advised Tehume that the kitchen cabinets would take approximately six to ten weeks to be delivered.

8.      After Tehume tendered the second installment, McCormick performed minimal work on the Property.  No new materials were delivered and laborers appeared sporadically, doing mere "busy work" when present.

9.      McCormick informed Tehume that he did not have the funds to complete the renovations and requested that she pre-pay the final installment so that he could perform the remainder of the work.  Tehume refused to advance the final installment and demanded that McCormick perform the remainder of the work as required under the Contract.

10.     After the kitchen cabinets failed to arrive within the specified time period, Tehume contacted the cabinet company, who advised her that the cabinets had never been ordered.

11.     On June 9, 2006, after giving McCormick numerous opportunities to perform the remainder of the Contract, Tehume notified McCormick that she "decided not to allow [him] to finish the job."  Thereafter, she hired another contractor to complete the renovations.

12.     Tehume filed a criminal complaint in the Superior Court of New Jersey, alleging theft by deception for McCormick's failure to supply the kitchen cabinets.  McCormick was indicted and plead guilty to the charges on July 22, 2007.  He paid Tehume $8,000.00 in restitution.[3]

13.     Meanwhile, on May 4, 2007, McCormick filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.

14.     On July 2, 2007, Tehume filed an adversary complaint in the Bankruptcy Court seeking to declare the debt owing by McCormick to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).

15.     McCormick filed an Answer to the Complaint on August 22, 2007.

16.     On October 3, 2007, McCormick's case was converted to a case under Chapter 7 of the United States Bankruptcy Code.

17.     On January 2, 2008, Tehume filed an Amended Complaint, alleging that the debt owing by McCormick was also nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

---

[3] For reasons unknown to the Court, the Superior Court of New Jersey, Middlesex County, granted McCormick's motion to vacate his conviction on March 25, 2009.

18.    McCormick filed an Answer to the Amended Complaint on February 25, 2008.

19.    The parties appeared and the Court conducted a trial on February 17 and August 20, 2009.

### III.    OPINION

Tehume argues that the debt owing to her should be declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) because McCormick obtained the second installment by false pretenses, false representations and/or actual fraud, or in the alternative, pursuant to subsection (a)(4), as McCormick embezzled the funds from her.[4]   In particular, Tehume asserts that McCormick made oral representations that the second installment would be used for a specific purpose, namely, hiring subcontractors and purchasing building materials, and that he failed to use the funds for such a purpose.   However, other than Tehume's testimony at trial, there is no evidence of those representations or that the payment was anything other than an installment provided for under the Contract.   Moreover, Tehume failed to present sufficient evidence that, at the time McCormick accepted the second installment, he had no intention to perform the remainder of the Contract.   To the contrary, McCormick's credible testimony demonstrated that, had he received funds from previously completed projects, he would have fully performed the remainder of the renovations.   Accordingly, the Court finds that Tehume has failed to sustain her burden to establish grounds to declare the debt owing by the McCormick to be nondischargeable.

Title 11 of the United States Code, section 523 (a)(2)(A) states:

---

[4] At trial, Tehume voluntarily dismissed the claim under 11 U.S.C. § 523(a)(6).  She also conceded that she was not claiming the original $7,400.00 deposit or first installment as damages.  Thus, her claims as to nondischargeability concern only the $25,000.00 second installment and related consequential damages.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The section provides three avenues for proving a debt nondischargeable: "false pretenses," "false representations," or "actual fraud."   Courts have held that "the use of the disjunctive 'or' demonstrates they embody somewhat different concepts."   In re Hambley, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  As in all § 523 cases, the burden of proof is on the creditor to prove the debt nondischargeable by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 288-89 (1991).  Thus, for purposes of this decision, the Court will examine whether Plaintiff has made out a case under any of the three § 523(a)(2)(A) grounds.

The first avenue is to establish that the debt was incurred by "false pretenses."  Courts have defined that term to mean "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." In re Kovler, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000)).  To establish that a debt was incurred by false pretenses, Plaintiff must establish: "(1) an implied misrepresentation or conduct by the [Debtor]; (2) promoted knowingly and willingly by the [Debtor]; (3) creating a contrived and misleading understanding of the transaction on the part of the [Plaintiff]; (4) which wrongfully induced the [Plaintiff] to advance money, property, or credit to the [Debtor]." Hambley, supra, 329 B.R. at 396.

For a court to find a debt nondischargeable based on a "false representation," the Debtor must have: "(1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the [Plaintiff] to turn over money or property to the [Debtor]." Ibid.  To support a

finding of false representation under § 523(a)(2)(A), it is sufficient to show that the Debtor made a "false or misleading statement about something, usually with the intent to deceive." In re Dobrayel, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (citing Black's Law Dictionary 619 (7th ed.1999)).  However, Plaintiff "must demonstrate that the representation was one of existing fact and not merely an opinion, expectation or declaration of intention."  In re Showalter, 86 B.R. 877, 880 (Bankr. W.D.Va. 1988) (citing In re Criswell, 52 B.R.184, 196 (Bankr. E.D.Va. 1985)).

Finally, to declare a debt nondischargeable as a result of "actual fraud," Plaintiff must establish the classic "five fingers of fraud." Id. at 12.  That is, Plaintiff must prove: 1) the Debtor made a material false representation; 2) at the time the Debtor knew it was false or showed reckless disregard for its truth; 3) the representation was made with the intent to deceive Plaintiff; 4) Plaintiff justifiably relied on the representation; and 5) Plaintiff sustained a loss as a result of the representation.  Ibid; In re Crim, 149 Fed.App'x. 427, 430 (5th Cir. 2005).

Tehume testified that McCormick requested the second installment so that he could hire sub-contractors and purchase building materials to complete the renovation.  She alleged that McCormick made specific representations about how the money would be used, but, as evidenced by the fact that little to no work was completed after she tendered the second installment, he had no intention of satisfying those representations.

McCormick conceded that he requested the money as an installment under the Contract, but he provided credible testimony that, at the time he requested and received payment, he fully intended to perform his obligations.  Notably, the record does not disclose any restriction on McCormick's use of the funds, or any specific representations with respect to the use of the second installment payment.  According to McCormick, he expected to receive payment for services performed for a third party on a separate property, which would have provided him with

sufficient funds to complete Tehume's renovation.  However, when that property failed to sell,

he was without the requisite funds to perform under the Contract.  In an attempt to remedy the

situation, McCormick requested that Tehume pre-pay the final installment, due at time of full

performance.  When Tehume refused to pre-pay the final installment, McCormick was forced to

breach the Contract.

Based on McCormick's credible testimony concerning his intent at the time he received

the second installment, Tehume cannot prove any of the § 523(a)(2)(A) grounds for

nondischargeability.  Simply put, the second installment was a payment provided for under the

Contract; there is no evidence that, at the time of contracting, McCormick did not intend to

perform.  To the contrary, until the second installment was tendered by Tehume, McCormick

performed a significant amount of work under the Contract.  See Williams v. White, 2009 Bankr.

LEXIS 2385, 2009 WL 2431643, at *3 (Bankr. W.D.Va. Aug. 5, 2009) ("No evidence put

forward shows that at the time of contracting the [d]efendants . . . did not intend to fulfill the

obligations under the [c]ontract.  There was no false obligation here, as [the defendants]

expended some effort to complete the work contemplated in the [c]ontract.")

Moreover, as in Williams, Tehume "failed to demonstrate that the [Debtor's] statements

were anything more than a promise to complete the project."  Ibid.  Other than Tehume's

testimony, there is no evidence of specific representations made as to how the second installment

would be used. [5]  Furthermore, the alleged misrepresentation occurred after the inception of the

Contract; thus, Tehume cannot show that she was fraudulently induced into entering into the

---

[5] However, had Tehume provided the Court with tangible evidence that McCormick made specific representations regarding the second installment, of which he had no intention or ability to fulfill, the outcome of the case under § 523(a)(2)(A) may have been different.

Contract.  See ibid. (precluding the plaintiffs' claim of reliance and loss because the defendants'

alleged misrepresentations were made after the plaintiffs entered into the contract").  Therefore,

she cannot succeed on a claim under § 523(a)(2)(A).

Tehume's claim of embezzlement likewise fails under § 523(a)(4).  That section prohibits

a debtor from discharging a debt "for fraud or defalcation while acting in a fiduciary capacity,

embezzlement or larceny[.]"  11 U.S.C. § 523(a)(4).  Embezzlement is defined as "the fraudulent

appropriation of property by a person to whom such property has been entrusted, or into whose

hands it has lawfully come."   In re Dawley, 312 B.R. 765, 779 (Bankr. E.D.Pa. 2004).  To

succeed on a claim of embezzlement, Tehume must demonstrate (1) that she entrusted the

Debtor; (2) with her property; (3) which the Debtor appropriated for his own use; and (4) with

fraudulent intent.  In re Dulgerian, 388 B.R. 142, 150 (Bankr. E.D.Pa. 2008).

As previously discussed, the record is devoid of a fraudulent intent on the part of

McCormick at the time he accepted the second installment.  Rather, he accepted these funds

while still committed to completing his obligations under the Contract.  Without sufficiently

demonstrating such an intention, Tehume cannot make out a claim for embezzlement under §

523(a)(4).

**III.**   **CONCLUSION**

For the aforementioned reasons, the Court finds that Plaintiff has not demonstrated, by a

preponderance of the evidence, that the obligation owing by the Debtor is nondischargeable

pursuant to either § 523(a)(2)(A) or § 523(a)(4).  Judgment for Defendant McCormick will be

entered accordingly.

Dated: October 7, 2009

Honorable Michael B. Kaplan
United States Bankruptcy Judge